IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NISAR A. ALVI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 5999 |
| v. | ) |
| | ) Judge Mark Filip |
| METROPOLITAN WATER | ) |
| RECLAMATION DISTRICT OF | ) |
| GREATER CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nisar A. Alvi ("Plaintiff" or "Alvi"), filed this lawsuit against the Metropolitan

Water Reclamation District of Greater Chicago ("Defendant" or "MWRD"). Mr. Alvi alleges

violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),

and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, concerning

his employment termination at the MWRD. Mr. Alvi claims that the MWRD discriminated

against him because of his national origin (D.E. 15 at 3)[1] and age (*id.*), in violation of Title VII

(Count I) and the ADEA (Count II), respectively.[2] The case is before the Court on the MWRD's

---

[1] The designation "D.E." refers to the docket entry number of the cited document.

[2] The Court previously granted Defendant's motion to dismiss in part. The Court granted the motion
insofar as the original complaint attempted to advance allegations beyond the scope of those presented to
the EEOC for its investigation. See D.E. 23 (memorandum opinion and order) at 5-9 (citing, *inter alia,
Cheek v. W. & S. Life Ins. Co.*, 32 F.3d 497, 500 (7th Cir.1994) ("As a general rule, a . . . plaintiff [in
an employment discrimination case] cannot bring claims in a lawsuit that were not included in
her EEOC charge.").)

summary judgment motion (also, "Motion") (D.E. 36).[3] The MWRD's Motion is well-taken

under settled precedent, and for the reasons stated below, the Motion is granted.

## RELEVANT FACTS[4]

The MWRD is a unit of local government created by an Illinois statute that provides for

sewage treatment and related services for most of Cook County, Illinois. (D.E. 45 (Pl. Resp. to

Def. SF) at Resp. to ¶ 2.) Mr. Alvi, a 59-year old man of Pakistani descent, began employment

---

[3] Defendant filed a motion to strike in conjunction with its reply in support of its Motion for Summary Judgment, which has been fully briefed. (D.E. 54 (Defendant's Motion to Strike Plaintiff's Denials of Paragraphs 16, 17, 18, 22, 25, 26, and 35 of the MWRD's Local Rule 56.1 (a)(3) statement of facts and to deem those paragraphs admitted); D.E. 57 (Plaintiff's Reply to Defendant's Motion to Strike Plaintiff's Denials).) The Court will address the motion to strike as appropriate throughout the opinion. Rather than rule on the individual paragraphs identified by Defendant, the Court will draw only from the portions of the responses that are appropriate, and it will ignore any inappropriate denials or improper additional statements of fact. Thus, the Court grants in part and denies in part the motion to strike.

[4] The Court takes the relevant facts from Defendant's Statement of Facts ("Def. SF") (D.E. 38); Statement of Material Facts by Nisar A. Alvi in Support of its Motion for Summary Judgment (although this document might suggest as much, Plaintiff has not filed a motion for summary judgment) ("Pl. Resp. to Def. SF") (D.E. 45); and Defendant's Response to Plaintiff's Additional Statement of Facts ("Def. Resp. to Pl. SF") (D.E. 53). Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court, as it must, resolves genuine factual ambiguities in the non-movant's favor. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Local Rule 56.1 ("L.R.56.1") requires that statements of facts contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir.2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *See, e.g., Malec*, 191 F.R.D. at 583 ("[A] movant's 56.1(a) statement should contain only factual allegations. It is inappropriate to allege legal conclusions."); *id.* ("Factual allegations not properly supported by citation to the record are nullities."). This rule, for example, prompts the Court to disregard Mr. Alvi's unsupported allegations in paragraphs 6-8, 26, and 28 of his statement of additional facts. (These statements are completely unsupported.) Similarly, Mr. Alvi's assertions in paragraph 19 of his statement is not supported by the cited materials, so those assertions are disregarded, and his assertions in paragraph 27 largely suffer from the same infirmities. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See* L.R. 56.1(a), (b)(3)(B); *see also Malec*, 191 F.R.D. at 584 (failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials justifying denial, is equivalent to admission).

with the MWRD in August 1994 as a Senior Mechanical Engineer. (D.E. 45 at Resp. to ¶ 4; D.E. 15 (1st Am. Complaint) ¶ 5.)

By enactment of the Illinois General Assembly, MWRD employees hired after December 31, 1987, "must be domiciled within the territorial boundaries of the sanitary district; provided that an employee on probationary status shall not be required to be so domiciled until six months after completion of probation." (D.E. 38 (Def. SF) ¶ 6 (quoting 70 ILCS 2605/4.38); D.E. 45. at Resp. to ¶ 6.) The Illinois statute further provides that, "Failure to comply with the requirements of this Section shall be cause for removal or discharge from employment." (70 ILCS 2605/4.38; D.E. 45 at Resp. to ¶ 6.)

The parties agree that Mr. Alvi was required by statute to be domiciled within the territorial boundaries of the MWRD within six months of May 1, 1995, the date when he successfully completed his probationary employment. (D.E. 45 at Resp. to ¶ 7.) The parties similarly agree that Alvi has lived exclusively at 1504 Lita Avenue, Deerfield, Illinois, in Lake County, since 1991. (D.E. 45 at Resp. to ¶ 9.) Prior to his starting work for the MWRD in 1994, the MWRD's Personnel Department notified Mr. Alvi that if he was not currently domiciled within the territorial boundaries of the MWRD, he was required to be become so domiciled within six months of his completion of probation. (D.E. 45 at Resp. to ¶ 4.) Nearly three years later, in April 1997, Mr. Alvi sent a letter to Ronald Huston, then Assistant Director of Personnel for the MWRD, stating that he owned a single family home in Elk Grove Village, Illinois, which was his domicile, even though he was currently residing elsewhere. (D.E. 53 at Resp. to ¶ 4.) Mr. Alvi has not lived in Elk Grove Village since at least 1991. (D.E. 45 at Resp. to ¶ 9.)

In March and April 1999, the MWRD's Director of Personnel, Patrick J. Foley, again informed Mr. Alvi, via letters sent to his Deerfield address, that he was required by law to move

3

within the territorial boundaries of the MWRD and that if he did not do so by May 31, 1999, discharge proceedings would be filed against him before the Civil Service Board, an administrative agency charged with conducting hearings and making decisions about MWRD employees' status. (D.E. 45 at Resp. to ¶¶ 12, 15.) On April 25, 2002, Mr. Alvi was discharged from MWRD employment for failing to be domiciled within the MWRD's territorial boundaries. (D.E. 45 at Resp. to ¶ 16.)

Mr. Alvi filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 21, 2002. (D.E. 1 (EEOC Charge attached to original complaint).) The EEOC issued a right to sue letter and Mr. Alvi filed his original complaint in this action on September 14, 2004. (D.E. 1.)

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d at 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

DISCUSSION

The MWRD has moved for summary judgment, arguing that Mr. Alvi's Title VII (Count I) and ADEA (Count II) claims fail because, *inter alia*, (1) he cannot establish a prima facie case; (2) the MWRD had a legitimate reason for seeking his discharge; (3) he has no evidence that the MWRD's stated reason for Alvi's discharge (*i.e.*, that he lived outside the MWRD's boundaries and outside the provisions of the Illinois statute, and declined the opportunity to relocate inside the MWRD boundaries despite being given extended chances to do so) was pretextual. For the reasons explained below, the MWRD's summary judgment motion is well taken under applicable precedent.[5]

## I.    Mr. Alvi's Briefs Are Not Properly Presented Within The Framework Established By the Local Rules and Related Caselaw

Although certainly not outcome-determinative, the Court is compelled to note that Mr. Alvi's summary judgment papers often fail to comply with Local Rule 56.1 and caselaw interpreting and applying it. As previously explained (see note 4, *supra*), Mr. Alvi's factual assertions often lack appropriate record support and accordingly the improper ones are disregarded under settled practice in this district. Furthermore, Mr. Alvi's response memorandum is written without ever referencing the Rule 56.1 factual filings, and instead improperly cites to raw discovery record material. This citation practice is materially improper. *See, e.g., Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section

---

[5]  Mr. Alvi's operative complaint (D.E. 15) labels Count I as discrimination on the basis of "National Origin" (*id.* at 3) and Count II as discrimination on the basis of "Age" (*id.*). In another portion of the complaint he also briefly alludes to discrimination on the basis of "race" (*id.* at 1); however his arguments concerning national origin discrimination (on the basis of his identified Pakistani origin and Asian-American status (*id.* at 2)) seem to encompass his race-based allegation. To the extent Mr. Alvi is raising an independent race discrimination claim, it fails for the same reasons as his identical or interrelated national origin discrimination claim fails.

[of a memorandum] should be to the 56.1(a) or (b) statement of facts only, unlike Malec's memorandum, which cites directly to pieces of the record"); *accord, e.g., Madaffari v. Metrocall Cos. Group Policy GL*, No. 02-4201, 2005 WL 1458071, *1 (N.D. Ill. June 15, 2005) ("[W]hen citing to the record in their legal memoranda, parties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record") (citing, *inter alia, Solaia Tech. LLC v. Arvinmeritor, Inc.*, 261 F. Supp. 2d 797, 826 (N.D. Ill. 2005)). The reason why this practice is improper is because it undermines the entire reason for the Local Rule 56 framework: to provide a mechanism to reliably and efficiently evaluate which facts are actually in dispute (by analyzing the Rule 56.1 filings) and then analyze whether the facts that actually are in dispute are legally material (by assessing the Rule 56.1 citations within the context of the legal arguments presented in the summary judgment briefs). Moreover, and perhaps even worse, many of the raw record citations in the brief do not support the propositions asserted, as they appear to be miscitations or citations to non-existent materials. *See, e.g.*, D.E. 42-2 (Alvi response memorandum) at 7 (repeatedly citing to Plaintiff's "Ex. XXX," which does not appear to exist); *id.* at 2 (citing to "Plaintiff's Ex. B, pg. 10," which also does not exist).[6] Mr. Alvi's brief also makes various assertions without even citing to the raw record. All of these practices are improper and the Court does not credit his unsupported claims.

---

[6] The MWRD suggests that Mr. Alvi presumably meant to cite to Plaintiff's Exhibit E, which is a copy of the deposition of John Farnan, Mr. Alvi's department head. This may (or may not) be correct; however, if it is correct, the Court notes that the reference to page 10 of Exhibit E would not support the proposition for which it was cited—namely, that Mr. Farnan "targeted" Mr. Alvi for a residency review. In fact, page 10 of the Farnan deposition establishes the opposite conclusion, as it explains that Mr. Farnan requested residency checks for "several employees" over the years besides Mr. Alvi, and that the requests typically were prompted, as they were here, by a telephone call or document which suggested that the relevant employee was living outside the MWRD's boundaries, as Mr. Alvi clearly was.

Again, none of this is outcome determinative. Although the Court is not required to do so, it has also reviewed the record to see if a broader look at the materials submitted suggests that summary judgment is inappropriate. To the extent one were inclined to throw out the procedural rules and engage in this endeavor (and the Court does not rule on such basis, but merely points out that the result comes out the same either way), if anything, things get worse for Mr. Alvi. As explained further below, his argument that he is domiciled within the MWRD boundaries is untenable under any circumstances, and no reasonable jury could conclude otherwise. Furthermore, and independently, when looking at the pretext analysis, the question is not whether the MWRD was correct in its assessments about his domicile, but whether its assessments were a pretext for discrimination. *See, e.g., Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992) (stating that "[n]either the jury nor this court is empowered to act as a 'super-personnel department' and decide if [an employer's employment decision] was unwise or unjustified") (citation omitted); *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1220 (7th Cir. 1991) (holding that a company's hiring and firing practices, for better or worse, may be "medieval," "high-handed," or "mistaken," so long as they are not based on discriminatory reasons) (citations and internal quotations omitted), *overruled in part on other grounds by Oxman v. WLS-TV*, 12 F.3d 652 (7th Cir. 1993). Mr. Alvi also fails to establish the "similarly situated comparator" requirement of his prima facie case, as explained further below.

## II.  Alvi Cannot Establish A Prima Facie Case on His Title VII and ADEA Claims

Title VII makes it unlawful, in relevant part, for employers "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). The two accepted ways of establishing that an employer

violated this prohibition are either by (1) direct evidence or (2) indirect evidence using the familiar *McDonnell Douglas* burden-shifting formula. *See, e.g., Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) (discussing, as to indirect method, the analysis under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). Similarly, the ADEA prohibits intentional discrimination against individuals older than age 40. 29 U.S.C. § 621(b). A plaintiff similarly may prove age discrimination under the ADEA via either the direct or indirect method. *See Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 468 (7th Cir. 2000).

The Seventh Circuit has defined direct evidence in the employment law context as evidence which, if believed by the trier of fact, will prove the particular issue in question without reliance on inference or presumption. *See, e.g., Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (citations omitted). The Seventh Circuit has repeatedly counseled that "[d]irect evidence usually requires an admission by the decisionmaker that his actions were based on" the illicit decision-making criterion. *Balderson v. Fairbanks More Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003); *see also Cerutti*, 349 F.3d at 1061 ("Direct evidence 'essentially requires an admission by the decision-maker that his action were based on the prohibited animus.'") (quoting *Rogers*, 320 F.3d at 753) (alteration omitted). The Seventh Circuit has explained that evidence of this sort is exemplified by statements such as "'I fired you because of your age'" or because of another illicit decision-making criterion. *Robin v. Expo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citation omitted); *accord, e.g., Castleman*, 959 F.2d at 1420 (teaching that direct evidence will "rarely" be found). Alvi offers no direct evidence of age or national origin discrimination, nor does he assert that he can present a triable case under the direct method of proof. Instead, he argues his response within the framework of the indirect

method of proof. Accordingly, the Court proceeds with the analysis under the *McDonnell Douglas* burden-shifting metric.

To establish a prima facie case of discrimination under Title VII and/or the ADEA, Mr. Alvi must put forth evidence that: (1) he belongs to a protected class, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly-situated employees outside the protected class were treated more favorably by the defendant. *See, e.g., Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004) (collecting cases); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002). If Mr. Alvi presents such a prima facie case, the burden shifts to the MWRD to articulate a legitimate, nondiscriminatory reason for the action taken against him. *See, e.g., Wyninger*, 361 F.3d at 978. If the MWRD offers a legitimate explanation, the inference of discrimination disappears, and to survive summary judgment, Mr. Alvi must demonstrate that there is an issue of triable fact as to whether the MWRD's proffered reason was a pretext for intentional discrimination. *See, e.g., id.* The ultimate burden to prove intentional discrimination remains with Mr. Alvi. *See, e.g., Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001)

The MWRD does not dispute that Alvi has established prongs 1 (inclusion in a protected class) and 3 (victim of an adverse employment action) of a prima facie case for age and/or national origin discrimination. (D.E. 37 at 3.) Rather, the MWRD argues first that Alvi has not established that he was meeting his employer's legitimate expectations because he was not domiciled within the MWRD boundaries but instead was domiciled in Deerfield. (*Id.*) Mr. Alvi's living in Deerfield is also the reason that the MWRD asserts that Mr. Alvi was legitimately terminated. Because Mr. Alvi must put forth evidence in support of all four prongs of the *McDonnell Douglas* framework to establish a prima facie case of discrimination, the Court

will first analyze the question of whether Mr. Alvi has identified similarly situation employees who were treated more favorably than him. The issue of whether Mr. Alvi was meeting legitimate expectations will be taken up within the discussion of the related question of whether the MWRD's asserted reason for firing him—*i.e.*, because he failed to abide by the MWRD domicile rule and refused to relocate—can colorably be seen as pretextual. As explained below, Mr. Alvi has failed on all fronts.

A.   Mr. Alvi Fails To Identify Similarly Situated Employees Who Were Treated More Favorably Than Him

Defendant argues that Mr. Alvi has not presented evidence that any similarly situated employee was treated more favorably than he was. "Identifying similarly situated employees is an essential piece of the prima facie case . . . ." *Kriescher v. Fox Hills Golf Resort and Conference Ctr.*, 384 F.3d 912, 916 (7th Cir. 2004). "A similarly situated employee is one who is 'directly comparable to the plaintiff in all material respects.'" *Rogers*, 320 F.3d at 755 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)) (alteration omitted); *accord, e.g., Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000) (showing substantial similarity of comparator "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.").

Mr. Alvi points to five non-Pakistani employees as purportedly being similarly situated to him and treated more favorably by the MWRD: Antonio Tijerina, Susan Gigante, Barbara Basile, Patricia Gafeney and Gerald Austiff. (D.E. 45 ¶¶ 24-29.) Plaintiff argues that Tijerina, Gigante, Basile and Gafeney, like him, were all employed by the MWRD's Engineering Department and

10

that, like him, they all lived outside the MWRD's boundaries. (D.E. 42 (Pl. Resp. to Def.'s Motion) at 7.) Plaintiff claims that, unlike him, however, Tijerina, Gigante, Basile, and Gafeney were allowed to retain their jobs, notwithstanding their living situation. (*Id.*) Similarly, he argues that Austiff was also a MWRD employee who lived outside the MWRD's boundaries, but, unlike him, Austiff was not fired. (D.E. 42 at 8.) Within the context of these arguments, Mr. Alvi further contends that "the domicile of an employee . . . is not a factor to consider in determining whether an employee is similarly situated." (D.E. 42 at 7.)

The Court respectfully rejects Alvi's argument that the domicile of an employee is not a factor for consideration in determining whether an employee similarly situated to Mr. Alvi was treated was more favorably than him. Rather, the employee's domicile is quite important to the analysis, as the location of Alvi's domicile is the reason the MWRD asserts that it moved to terminate his employment and it is an employment requirement articulated by the Illinois General Assembly for the MWRD. (*See* D.E. 38 ¶ 13; *see also* 70 ILCS 2605/4.38 ("Failure to comply with the requirements of this Section shall be cause for removal or discharge from employment.").)

The Court also respectfully rejects Mr. Alvi's argument that Tijerina, Gigante, Gafeney and Basile are comparators. Each of these individuals requested waivers of the MWRD's domicile requirement because each of them is married to an MWRD employee who is not subject to the domicile requirement, which only took effect in 1988 when the Illinois statute was enacted with prospective force. (D.E. 38 ¶ 22; D.E. 45 at Resp. to ¶ 22; 70 ILCS 2605/4.38.)[7] (Put

---

[7] Mr. Alvi attempts to dispute this statement, stating in response that these individuals "were, in fact, subject to the domicile requirement under law." (D.E. 45 at Resp. to ¶ 22.) As Mr. Alvi does not dispute that these individuals requested waivers of the domicile requirement based on their marital situation or cite to any evidence that the waiver was granted for any other reason, the Court deems that Mr. Alvi has accepted this statement as fact. *See Malec*, 191 F.R.D. at 584.

differently, the Illinois statute expressly grandfathers employees who were hired before
December 31, 1987.) The MWRD asserts that it granted the requested waivers to these
individuals "on the grounds that his/her spouse also worked for the MWRD and began
employment prior to 1988 and therefore was not subject to the domicile requirement." (D.E. 38 ¶
22.) The Parties agree that Alvi's wife has never worked for the MWRD, and no one contends
that Mr. Alvi or his wife qualify for the "grandfathering" treatment either. (D.E. 45 at Resp. to ¶
27.) Therefore, Alvi's treatment as it relates to the domicile requirement cannot reasonably be
compared to Tijerina, Gigante, Gafeney, and Basile's because they are not "similarly situated" to
him far as their living situation is concerned. *See, e.g.*, *Rogers*, 320 F.3d at 755 (holding that
other employees were not similarly situated when there was no evidence that the other employees
acted under circumstances similar to claimant's).

Unlike Tijerina, Gigante, Gafeney, and Basile, Gerald Austiff was not married to an
MWRD employee who was exempted by the grandfathering provision from the MWRD domicile
requirement. Mr. Alvi argues that Austiff was "similarly situated" to him, in that Austiff was a
MWRD employee who resided outside the MWRD's territorial boundaries, but that, unlike Mr.
Alvi, Austiff continued to reside outside those boundaries after the MWRD learned of his
residency and was not subject to termination. (D.E. 42 at 8.) Again, the Court respectfully finds
that Austiff was not a similarly situated employee treated more favorably than Alvi because,
unlike Alvi, the parties agree that Austiff submitted a lease to occupy property within the
MWRD's territorial boundaries prior to a final decision being made on his termination by the
Civil Service Board. When Mr. Austiff presented the lease showing that he had relocated, along
with other materials reflecting that he was in the process of selling his home outside the MWRD
boundaries, such evidence prompted the Civil Service Board to strike the matter from the

Board's call, with the Chairman explaining that Mr. Austiff had "in fact moved into the District." D.E. 53-1, Ex. 1 (transcript of Civil Service Board meeting of September 12, 1996) at 32.

In this regard, the record reveals that, like Mr. Alvi, Mr. Austiff resided outside the MWRD's boundaries in Bourbonnais, Illinois at the completion of his probationary employment period in 1995. (D.E. 53 (Def. Resp. to Pl. Resp. to Def. SF) at Resp. to ¶ 24.) The MWRD therefore notified Austiff that he was required to comply with the domicile rule within six months of the completion of his probationary period. (*Id.* at Resp. to ¶ 25.) Plaintiff argues, without support, that no termination charges were filed against Austiff. (D.E. 45 ¶ 26.) The Court disregards Plaintiff's unsupported speculation. *See Hall v. Bodine Elec.* Co., 276 F.3d 345, 354 (7th Cir. 2002) ("It is well settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact.") (citing *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)); *accord, e.g., Krchnavy v. Limagrain Genetics Co.,* 294 F.3d 871, 877 (7th Cir. 2002) (same; collecting cases). In addition, the MWRD has provided a copy of the termination charges it filed against Austiff for failing to be domiciled within its boundaries and an affidavit authenticating the document. (D.E. 53 at Resp. to ¶ 26; *Id.*, Ex. H, G.) Thus, Mr. Alvi has failed to show that the MWRD treated Austiff more favorably than Alvi—in point of fact, the MWRD filed termination charges against both men for failing to be domiciled within its boundaries.

Plaintiff also claims that the MWRD treated Austiff, a non-Pakistani individual, more favorably than him because, although Austiff "submitted a lease agreement for property in Schaumburg, Illinois [within the MWRD's boundaries], for which the lessee an individual (sic) by name of Bradley Skelnka," "Austiff did not provide the [MWRD] with any other documentation showing that he was in compliance with the domicile requirement, and as recent

[sic] as 2002, Mr. Austiff continued to own property and/or reside at his Bourbonnais address."
(D.E. 45 ¶ 27.) As previously explained (see note 4, *supra*) most of these assertions are
unsupported as required by Local Rule 56.1 and thus are disregarded. Moreover, as support for
his argument that Austiff continued to reside in Bourbonnais through 2002, Plaintiff cites an
unauthenticated printout which he claims to be "Kankakee County Tax Assessor Records." (*Id.*,
Ex. D.) However, the MWRD correctly argues that the unauthenticated printout Plaintiff
references as support for his contention that Austiff remained domiciled outside the MWRD's
boundaries in 2002 is not admissible evidence and should not be considered by the Court. *See,
e.g., Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 808 (7th Cir. 2005) (holding that
the district court had properly refused to accept claimant's proposed facts when claimant
"support[ed][his] responses with . . . unauthenticated documents," which are insufficient to
create a genuine issue of material fact). (D.E. 53 at Resp. to ¶ 27.) Therefore, the record, as
properly considered, reveals that Austiff was not similarly situated to Alvi (in that he relocated
when given the chance) and was not treated more favorably in any event. On this record, Mr.
Alvi has failed to demonstrate, as precedent requires, "that there is someone who is directly
comparable to him in all material aspects" who was treated differently concerning the disputed
employment issue. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004)
(quoting *Grayson*, 308 F.3d at 819 (collecting cases)). Accordingly, the MWRD is entitled to
summary judgment on Alvi's claims because he has failed to identify a similarly situated
individual who was treated more favorably than he was.

Before moving on, the Court notes that, even if the unauthenticated tax record were
considered, it still would be of no help to Mr. Alvi. All the document indicates (assuming it is
genuine) is that Austiff owned property in Bourbonnais in 2002, not that he lived in that

14

residence or was domiciled there. Plaintiff has presented *no* facts indicating that he was terminated for *owning* property outside the MWRD's boundaries, and a reasonable jury could not reach such a conclusion, even if it were to consider the unauthenticated document. Therefore, even if Austiff did own property in Bourbonnais in 2002, Plaintiff would still have failed to present evidence that Austiff was treated more favorably than Plaintiff by being allowed to keep his job and own property outside the MWRD's boundaries. Similarly, even if the Court were inclined to scour the record looking for the Austiff lease Mr. Alvi references without appropriate citation—an obligation the Court need not undertake, *see, e.g.,* Rogers, 320 F.3d at 751—that lease clearly identifies Mr. Austiff as the "Occupant" and "Lessee" of the property within the MWRD boundaries, reflecting that he had relocated. *See* D.E. 45, appended document ALV 0156; *see also id.,* 53-1, Ex. I at 32 (statement of the Chairman of Civil Service Board on September 12, 1996, that Mr. Austiff had demonstrated that he had "in fact moved into the District" and that therefore the Chairman was striking the Austiff termination proceedings from the docket); *id.,* Exs. J and K (various documents reflecting that Mr. Austiff has resided within the MWRD since he relocated from outside the district). The fact that another individual is also listed as lessee on the Austiff lease shows nothing more than that Mr. Austiff had a roommate, as he explained at the Civil Service Board hearing where his termination proceedings were stricken. *See,* D.E. 53-1, Ex. I at 31.[8] There is nothing improper about having a roommate, and Mr. Alvi

---

[8] Certain factual materials cited above are from the record, as opposed to the Rule 56.1 statements. If the Court is going to excuse Plaintiff's failure to present factual assertions within the framework established by Local Rule 56.1 and related caselaw, evenhandedness dictates that the Court consider materials presented by the MWRD in response to improperly-tendered assertions of Mr. Alvi. When such materials are considered, it is clear that Mr. Alvi's position is untenable. The same outcome is reached when one considers his position within the parameters of the Rule 56.1 framework. Thus, he loses under either scenario.

does not contend that he was terminated because he too was residing with others (namely, his wife and family) in Deerfield.

Thus, any way the record is analyzed, Mr. Alvi has failed to show that others similarly situated to him were treated differently. The MWRD has over 2,000 employees, and Mr. Alvi has failed to show that any of them satisfies the similarly situated requirement as applied to his Title VII or his age-discrimination claim. Thus, both claims fail at this threshold stage of the *McDonnell Douglas* analysis.

## III. The MWRD Has Proffered A Legitimate Nondiscriminatory Reason For Alvi's Discharge And Alvi Has Failed to Present Evidence Indicating That The Proffered Reason For His Firing Is Pretextual

In addition, and independently, the MWRD is entitled to summary judgment on Counts I and II because Mr. Alvi has failed to cast meaningful doubt on the MWRD's non-pretextual justification for his termination—that the MWRD has only granted waivers of the domicile requirement to individuals working outside of the MWRD's boundaries or married to an MWRD employee not subject to the domicile requirement because they became employed with the MWRD before 1988. (D.E. 38 ¶ 17.)[9] In this regard, the MWRD offers evidence that Alvi lived outside its boundaries the entire time he was employed at MWRD and this led to its decision to

---

[9] Mr. Alvi attempts to deny this fact by stating that Gerald Austiff was "has not resided within the District's boundaries, but was not terminated." (D.E. 45 at Resp. to ¶ 17.) However, as discussed, *supra*, Mr. Alvi has no admissible evidentiary support for this assertion or for his assertion that "the categories invented in Plaintiff's paragraph 17 may not be exclusive," and, therefore, this fact is considered admitted. Specifically, with regard to Mr. Alvi's speculation that there may be other relevant categories of exemptions that he has not identified, the Seventh Circuit has repeatedly and pointedly instructed that such speculation is inadequate to forestall an otherwise appropriate grant of summary judgment. *See, e.g., Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (affirming grant of summary judgment against plaintiff for failure to adduce actual admissible evidence in support of a contention and explaining, "[a]s we have often stated, summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'") (collecting cases and quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

file termination charges against him. (D.E. 38 at ¶¶ 9-10, 13. ) Mr. Alvi casts no meaningful question as to the truthfulness of this reason.

As explained, the Seventh Circuit instructs that this Court does "not sit as a super-personnel department" that reexamines the propriety, correctness, or wisdom of any otherwise lawful personnel decision. *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir.2004) (citation omitted). Rather, "the focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* at 784 (internal quotation and citation omitted). The Seventh Circuit also has instructed repeatedly that arguing about whether a company was correct or not concerning an honestly held basis for an employee's firing is "a distraction." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir. 1999); *accord, e.g., Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (citation omitted). Put differently, under Title VII and the ADEA, a company can be mistaken about a reason that led to an employee's termination, so long as the company's decision to terminate was not infected by ageism or bigotry.

With regard to pretext, Alvi argues that "the District has interpreted and enforced its domicile requirement however it has deemed fit, and granting (sic) waivers however it sees fit" and that "Mr. Alvi's position regarding domicile went unchallenged, and unquestioned for over five years until Mr. Farnan targeted Mr. Alvi." (D.E. 42 at 6.) The Court finds Plaintiff's pretext arguments argument so weak as to fail to create a triable issue concerning whether the MWRD's articulated reason for firing Alvi is pretextual. *See, e.g., Davis*, 368 F.3d at 784 ("[A] pretext for discrimination . . . means something worse than a business error; pretext means deceit to cover one's tracks.") (internal quotations and citations omitted)); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ( "[P]retext means a dishonest explanation, a lie rather

17

than an oddity or an error.") (citation omitted). Quite simply, Alvi does not offer evidence to dispute that at the time the MWRD filed termination charges against him, it believed his domicile was actually located outside its boundaries (as it clearly was), regardless of whether it was apprised of this information earlier and probably should have fired him sooner. He has offered no evidence that the MWRD has granted any "waiver" of its domicile requirement other than: (1) the marital waiver described above, under which Mr. Alvi does not even claim he qualifies; and (2) the waiver for those few people (seemingly less than 1% of the MWRD workforce) who actually work outside the territorial boundaries of the MWRD, for which Mr. Alvi does not contend he is eligible either. Alvi has admitted that he lived in Deerfield, outside the MWRD's boundaries, the entire time he was employed by the MWRD and offers no evidence to show that this was not the MWRD's honest reason for its adverse employment action against him. (D.E. 45 ¶ 9.) Although Mr. Alvi claims that the MWRD's reason for filing termination charges is pretextual because, he alleges, the MWRD "has allowed non-Pakistani, non-Asian similarly situated employees to continue employed (sic) without the district boundaries," as discussed above, he has offered no evidence of the MWRD treating similarly situated employees more favorably with regard to its domicile requirement. Because Mr. Alvi has not offered evidence that creates a triable issue as to whether the MWRD's proffered nondiscriminatory reason for terminating him is pretextual, summary judgment is appropriate as to Counts I and II on that independent basis.

Before concluding, the Court notes that while the MWRD would be entitled to summary judgment even if the MWRD erred in good faith concerning the domicile question for Mr. Alvi—because an employer is entitled to be wrong about an issue or judgment, so long as it is not being discriminatory, *see, e.g., Green*, 197 F.3d at 900—the record is overwhelming that Mr.

Alvi was and is in fact domiciled in Deerfield, Illinois, outside of the MWRD boundaries. He thus was not meeting his employer's legitimate expectations under the law—yet a third basis on which summary judgment is warranted.

In this regard, it is undisputed, within the framework of Local Rule 56.1, that Mr. Alvi has resided in Deerfield, Illinois, at all times relevant to this case (Def. SF ¶ 8)—a period of time that reaches back to at least 1994 when Mr. Alvi was first employed by MWRD. Mr. Alvi has resided in Deerfield exclusively since the beginning of 1991 (*id.* ¶ 9), and Mr. Alvi does not contend that Deerfield is within the MWRD boundaries (*id.* ¶ 10). Mr. Alvi also concedes that being domiciled within the MWRD boundaries is a requirement of employment with the MWRD. (*Id.* ¶ 11.)

Moreover, if one opens up the analysis to consider the whole record (including Mr. Alvi's improperly presented materials), the record further reflects that, during the Civil Service Board proceedings, Mr. Alvi admitted facts in his discovery responses that negate any contention that he is "domiciled" in the Elk Grove property that he also owns. These admissions include that:

- Renters, not Mr. Alvi, have lived in his Elk Grove Village property from December 1990 to the present;

- Mr. Alvi has not been registered to vote in Elk Grove Village since he began his employment with MWRD in 1994; however, he has been registered to vote in Deerfield since 1994;

- Mr. Alvi's personal clothing has been kept at his Deerfield home throughout the period since he started with the MWRD in 1994, and none of his clothing has been kept at the Elk Grove Village property;

- Mr. Alvi has never slept at the Elk Grove Village property since starting with the MWRD in 1994;

- All of Mr. Alvi's federal and state income tax materials have been sent to Mr. Alvi's Deerfield home since he began employment with the MWRD since 1994;

- Mr. Alvi has applied for and received a homeowner's exemption for the real estate taxes on his Deerfield home since 1994;

- Since Mr. Alvi began his employment at the MWRD in 1994, his wife and children have lived at the Deerfield home with him and not at the Elk Grove village property;

- Mr. Alvi has not owned any motor vehicles registered under his Elk Grove Village property since he began employment with the MWRD; however, he has owned motor vehicles registered to the Deerfield property throughout the time since 1994; and

- Mr. Alvi has received Illinois driver's licenses since 1990 listing the Deerfield address as his own.

*See* D.E. 52 (collecting citations). Mr. Alvi claims that his real domicile is the Elk Grove Village property, but this contention is not colorable in light of the facts established above. Although the MWRD need not show it is correct in its assessment of Mr. Alvi's domicile to merit summary judgment on the record presented—*see, e.g., Aungst*, 937 F.2d at 1220 (holding that a company's hiring and firing practices may be "medieval," "high-handed," and "mistaken" so long as they are not based on discriminatory reasons)—in this case, any reasonable jury would necessarily conclude that Mr. Alvi was domiciled in Deerfield at the time of his termination (and had been domiciled there for many years previously). *Accord, e.g.*, D.E. 38, Ex. I (termination decision of the Civil Service Board, in *In the Matter of Nisar A. Alvi*) at 3-6 (applying Illinois precedents concerning domicile issue and holding, "[i]n the instant case, we believe that all of the relevant facts clearly demonstrate that Mr. Alvi's domicile and current residence [in Deerfield, outside the MWRD boundaries] are one and the same").

Finally, the Court notes that Mr. Alvi's contention that the MWRD follows no guidelines in terminating people for lack of residency is unsupported and further appears to be clearly incorrect. The MWRD grants exemptions when someone works outside the boundaries of the MWRD or is married to someone who is grandfathered into a residence because they worked for

the MWRD before the statute establishing the residency requirement became effective. Mr. Alvi may quarrel with the substance of those policies, but that is not the relevant benchmark. *See, e.g., Aungst*, 937 F.2d at 1220. The MWRD has consistently applied its rules without regard to age, race, or national origin,[10] and Mr. Alvi has submitted nothing to suggest that the MWRD's proffered reason for firing him was a pretext for engaging in national origin or age discrimination. For all of these reasons, Mr. Alvi's case is subject to summary judgment under well settled law.[11]

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment as to Counts I and II. (D.E. 34.) Summary judgment is warranted for MWRD for all of the various (and largely independent) reasons stated above.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:     6/23/06

---

[10] The MWRD explains that between 1989 and 2004, it filed termination charges with the Civil Service Board against 16 employees (including Mr. Alvi) for failure to be domiciled within the MWRD's boundaries. (D.E. 53; Ex. E at 2-4, Ex. G). All but three of these employees, including Mr. Alvi as one of the three, achieved compliance with the MWRD's domicile requirement by relocating prior to termination. (*Id.*) Of these sixteen employees, excepting Mr. Alvi, five individuals were categorized as "Asian or Pacific Islander," seven individuals were "white non-Hispanic," and two individuals were "Black non-Hispanic." (*Id.*) In addition, nine of the individuals are younger than Alvi. (*Id.*) Of the three people who would not relocate, one (a "white non-Hispanic" male) resigned, and two (Mr. Alvi and a "white non-Hispanic" male) were fired. (*Id.*) Although the Court need not rely on these materials in ordering summary judgment, if the full record of submitted materials is considered (including Mr. Alvi's improperly presented materials), this information further suggests that Mr. Alvi's position is unfounded.

[11] The MWRD further asserts that Alvi's claims are barred by the statute of limitations and, therefore, summary judgment is independently appropriate on that basis. (D.E. 37 at 12.) Mr. Alvi does not offer any response to this argument. While the argument may be well taken, the Court need not reach it because summary judgment is, in the Court's view, warranted on the bases identified above.